UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DAVID CHESTER FAULKNER, )
  )
    Plaintiff, )
  ) No. 3:11-CV-154
  ) (GUYTON)
V. )
  )
WARDEN OSBOURNE, *et al.*, )
  )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 63]. Now before the Court is a Motion for Summary Judgment and/or Motion to Dismiss [Doc. 41], filed by Defendants David Osborne, Bill King, Ginger Davidson, Fred James, and Dan Walker. The Plaintiff has responded in opposition to the Defendants' Motion [Doc. 55], and thus, the Court finds that the Motion for Summary Judgment and/or Motion to Dismiss is now ripe for adjudication.

For the reasons stated below, the Court finds that the Motion for Summary Judgment and/or Motion to Dismiss is well-taken to the extent it requests dismissal of the claims against the Defendants, and it will be **GRANTED**. The Plaintiff's claims against these defendants will be **DISMISSED WITHOUT PREJUDICE**.

## I. BACKGROUND

The Plaintiff, David Chester Faulkner, is an inmate in the custody of the Tennessee Department of Correction ("TDOC"), housed at Morgan County Correctional Complex ("MCCX). He filed the instant case, a civil rights action under 42 U.S.C. § 1983 against MCCX employees Warden David Osborne, Lieutenant Bill King, Sergeant Ginger Davidson, Unit Manager Fred James, and Health Services Administrator Dan A. Walker. His Complaint was executed and given to the Warden on or about March 9 or 10, 2011, and was received by the Court on April 4, 2012. [Doc. 2].

In his Complaint, Plaintiff alleges that on March 5, 2011, he was "left naked, to sleep on hard concrete floor with no mattress or bedding for 2 days with a severely dislocated shoulder" in violation of his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment of the United States Constitution. The Plaintiff argues that Defendants King and Davidson knew or should have known that putting him "in a cell nude and injured . . . is not allowed, but is in fact a violation of Plaintiff's civil rights." [Doc. 2 at 8]. The Plaintiff asserts he was taken to an outside hospital, "sedated to re-locate shoulder joint, and told by the orthopedic doctor that there was most definitely a tear of tendons and or ligaments in shoulder and it would need surgical repair." [Doc. 2 at 8]. Plaintiff alleges that he was then transported back to MCCX and admitted to the infirmary where he stayed until March 8, 2011, when Defendant Osborne "came to [his] cell door in the infirmary and got upset about another issue, then met with Defendant Walker and all of a sudden Plaintiff was kicked out of infirmary and denied further treatment." [Doc. 2 at 8-9].

The Plaintiff alleges that, as of the date he executed the Complaint, "19 days after incident," he "has received no follow up treatment on right shoulder from MCCX medical staff,

2

they seem[ed] to be acting deliberately indifferent to Plaintiff's serious medical needs." [Doc. 2 at 9]. The Plaintiff maintains that he has written requests to Defendants Osborne, James, and Walker requesting follow up treatment to no avail. [Doc. 2 at 9].

## II. ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The PLRA requires prisoners to exhaust administrative remedies before filing a lawsuit under 42 U.S.C. § 1983. Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.") The Supreme Court of the United States has explained and reaffirmed, "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (citing Porter, 534 U.S. at 524).

In Woodford v. Ngo, 548 U.S. 81, 93 (2006), the United States Supreme Court held that if a prisoner fails to file a timely prison grievance, the prisoner fails to satisfy the PLRA's exhaustion requirement, explaining:

> [P]roper exhaustion of administrative remedies . . . "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." [. . . .] Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on

3

the course of its proceedings.

Id. at 90-91 (citations and emphasis omitted). The Court of Appeals for the Sixth Circuit has specifically directed that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); see also Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005).

Courts within this Circuit have strictly enforced the exhaustion requirement. See Fox v. Corrections Corp. of America, 2008 WL 5136340, at *4 (M.D. Tenn. Dec. 8, 2008) (action dismissed without prejudice under 42 U.S.C. § 1997e(a) where it was brought one month prior to resolution and exhaustion of plaintiff's available administrative remedies); see also Hayes v. Allgood, 2008 WL 413626 (M.D. Tenn. Feb. 13, 2008) (complaint dismissed without prejudice where plaintiff "tendered his complaint to the Clerk, and thus brought suit under § 1997e(a), before exhausting his remedies").

TDOC Policy No. 501.01, Inmate Grievance Procedures, states in pertinent part:

> IV. DEFINITIONS:
> . . . .
>
> B. Calendar Days: A time limit that begins to run at 12:01 a.m. on the day following the date of the triggering event. Example: if an inmate files a grievance and the alleged triggering event occurred on April 1st, the seven calendar day's time limit for filing grievances set by Section VI.(C)(1) below would begin to run at 12:01 a.m. April 2nd, and end at 11:59 p.m. on April 8th.
> . . . .
>
> E. Grievance: A written complaint concerning . . . any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within the Department or institution which personally affects the inmate complainant.

[Doc. 43-1 at 1]. TDOC Policy No. 501.01 explains the procedure for grievance review as

4

follows:

> VI. PROCEDURES:
>
> . . . .
>
> C. Levels of Review
>
> 1. First Level: Grievances must be filed utilizing CR-1394 within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance . . . .

[Doc. 43-1 at 2].

In the instant case, the Plaintiff submitted an inmate grievance complaining:

> On 3-5-11 at about 2:30 pm I was handcuffed by Sgt. Davidson and Lt. King. All my property, mattress and bedding were removed from my cell, Unit 26-B-111. My clothes were stripped off of me, and I was left in the cell nude, without anything. This was not done by psych, it was done by security as something called behavior management. I was left like this for 3 days, I had to sleep nude on a bare concrete floor, I was not fed on Sat. or Sunday or Monday morning. Shift supervisors checked me every shift so they can't say they did not know. Clothing, bedding and food are not allowed to be used as tools to punish inmates under TDOC policy . . . .

[Doc. 45-1 at 1]. This grievance, identified as grievance no. 00232606, was submitted and received on March 15, 2011, [Doc. 45-1 at 1, Doc. 45 at ¶ 3], and returned to Plaintiff on March 16, 2011, by MCCX grievance chairperson Anthony Young. Mr. Young attached an Inappropriate Grievance Notification, form CR-3689, which informed the Plaintiff that his grievance was being returned because "[g]rievances must be filed within 7 calendar days of the occurrence giving rise to the grievance." [Doc. 45-1 at 3]. The Inappropriate Grievance Notification further explained:

> Reminder: You have SEVEN CALENDAR DAYS FROM THE DATE THE INCIDENT OCCURRED to submit a grievance. If you would like to appeal this response, sign the bottom of your

5

grievance, check "yes" then date it and place (with this coversheet) back in the grievance box.

[Doc. 45-1 at 3].

On March 22, 2011, Plaintiff appealed the first level response. [Doc. 45-5 at 1]. On March 24, 2011, the grievance committee conducted a grievance hearing, but the Plaintiff did not attend the hearing and the committee recommended the grievance be dismissed based on Plaintiff's failure to attend. [Doc. 45-5 at 10-11]. On March 28, 2011, Defendant Osborne responded to the grievance and stated that he agreed with the grievance committee's proposed dismissal of the grievance. [Doc. 45-5 at 10-11]. On March 31, 2011, Plaintiff indicated that he wished to appeal the second level response – *i.e.* the committee and Defendant Osborne's review. [Doc. 45-5 at 11]. On April 18, 2011, the TDOC Assistant Commissioner of Operations responded to the Plaintiff's appeal of the second-level response and indicated his concurrence with the second-level response. [Doc. 45 at 12.].

Based on the foregoing, the Court finds that grievance no. 00232606 was not exhausted until April 18, 2011. The Court finds that the Complaint in this matter was signed by Plaintiff on March 21, 2011, and delivered to the Clerk of Court on April 4, 2011. "A suit is 'brought' under 42 U.S.C. § 1997e(a) when a prisoner tenders his § 1983 complaint to the clerk. Hayes, 2008 WL 413626 at *3. Thus, the Court finds that this suit was initiated on April 4, 2012, prior to the Plaintiff exhausting his administrative remedies. The Court finds the Plaintiff's allegations in the Complaint constitute an unexhausted grievance that cannot be brought in court. See Jones, 549 U.S. at 211.

The Court, therefore, finds that the Plaintiff has failed to state a claim upon which relief can be granted, and the Court finds that the claims against these Defendants should be dismissed without prejudice.

### III. CONCLUSION

The Court finds that the Motion for Summary Judgment and/or Motion to Dismiss **[Doc. 41]**, filed by Defendants David Osborne, Bill King, Ginger Davidson, Fred James, and Dan Walker, is well-taken in its request for dismissal, and it is **GRANTED**. All claims against Defendants David Osborne, Bill King, Ginger Davidson, Fred James, and Dan Walker are **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court shall enter a Judgment consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge